47 A.3d 1087

**LONG GREEN VALLEY ASSOCIATION, et al.**

v.

**PRIGEL FAMILY CREAMERY, et al.**

**No. 0350, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

June 29, 2012.

J. Carroll Holzer (Holzer & Lee, PA, on the brief) Towson, MD, for appellant.

John B. Gontrum (Jennifer R. Lazenby, Whiteford, Taylor & Preston, LLP, on the brief) Towson, MD, for appellee.

Panel: EYLER, DEBORAH S., WRIGHT, KEHOE, JJ.

WRIGHT, J.

This case arises from a decision of the Baltimore County Board of Appeals ("Board") upholding the Baltimore County Deputy Zoning Commissioner's grant of a petition for special exception filed by appellee, Prigel Family Creamery ("Creamery").[1] The Creamery sought a permit for "a Farm Market; or alternatively for a Farmer's Roadside Stand" pursuant to the Baltimore County Zoning Regulations ("BCZR"), which appellants, Long Green Valley Association, Carol Trela, John Yoder, Susan Yoder, and Charlotte Pine, opposed. After

---

1. Although appellants captioned their appeal against "Bellevale Farms, Inc., *et al*.[,] Respondents," a review of the record shows that the Creamery was the sole respondent in the proceedings below and is, therefore, the sole appellee before this Court. As counsel for the Creamery explains, "Robert Prigel and his wife own the Bellevale Farm ... and also the [Creamery], which is located on [Bellevale Farm]."

hearing the matter on October 15, 2009, the Board issued an opinion and order on March 25, 2010, granting the Creamery's request. Thereafter, appellants and the People's Counsel for Baltimore County filed motions for reconsideration which the Board denied.

On July 16, 2010, appellants filed a petition for judicial review in the Circuit Court for Baltimore County. After holding a hearing on January 14, 2011, the court issued a memorandum opinion and order on April 5, 2011, affirming the Board's decision. On April 21, 2011, appellants filed this appeal.

## Questions Presented

We have adopted the questions presented by the Creamery: [2]

1. Was the Board of Appeals legally correct in finding that the special exception requirements had been satisfied for the Farm Market?

2. Was the Board of Appeals legally correct in finding that the B.C.Z.R. criteria had been satisfied for the Farmer's Roadside Stand?

For the reasons that follow, we uphold the Board's decision and affirm the judgment of the circuit court.

## Facts

The Creamery is located on Bellevale Farm in the Long Green Valley of northeastern Baltimore County. The farm, which is zoned R.C.2 for Agricultural Preservation,[3] consists of approximately 200 acres, 180 of which have been placed in an

---

**2.** The "questions presented" by appellants consisted of arguments and conclusory statements, and not issues or questions to be addressed by this Court.

**3.** "The R.C.2 zoning classification is established pursuant to the legislative findings above in order to foster conditions favorable to a continued agricultural use of the productive agricultural areas of Baltimore County by preventing incompatible forms and degrees of urban uses." BCZR § 1A01.1B.

agricultural easement with the Maryland Agricultural Land Preservation Foundation ("MALPF").[4] Both the Creamery and the farm are owned by the Prigel family. The Prigels have operated a dairy on their farm for several generations.

According to the operator of the dairy, Robert Prigel, Bellevale Farm is "quite different than the average commercial dairy farm in the United States." He explained:

It's patterned more after a New Zealand style dairy. Everything we have is grass. The cows go out and graze every day.

They get new sections of grass every twelve hours. The daytime, since the pasture[ ] is pretty much divided, half on the north side, half on the south side of Long Green Road, the cows graze the north side during the day, and the south side in the evening time.

We're also certified organic. . . .

Mr. Prigel stated that approximately 150 cows are milked on a daily basis, for an average of 500 gallons of milk per day. He added that his family sells the majority of the milk wholesale.

On or about March 31, 2006, the Creamery filed a petition for special exception "per BCZR § 404.4D and § 502.1 to permit a Farm Market; or alternatively for a Farmer's Roadside Stand per BCZR § 404.4C." The Prigels intended to sell milk, butter, yogurt, ice cream, jams, beef, pork, chicken, eggs, and crafts, with about 95% of the merchandise being dairy products. The Prigels planned to construct a 10,000 square foot building on the north side of Long Green Road to house the Creamery and retail area. They proposed a parking area on a porous paving surface to accommodate eight vehicles.

Due to the farm's location in the R.C.2 zone and the easement encumbering the bulk of the property, the Prigels sought permission from both the Baltimore County Agricul-

---

4. In a separate legal action filed in the Circuit Court for Baltimore County, some, but not all of the appellants raised issues with regard to MALPF's review of appellee's Deed of Easement. *See Long Green Valley Ass'n v. Bellevale Farms, Inc.*, 205 Md.App. 636, 46 A.3d 473 (2012).

tural Land Preservation Advisory Board ("BCALP") and MALPF. By letter dated October 29, 2007, MALPF informed Mr. Prigel that it "approved the construction of a 7,000 to 10,000 square foot building to house the creamery operation, processing facility and farm store," conditioned upon the following:

Must not interfere with other agricultural or silvicultural operations.

Must not limit future agricultural or silvicultural production.

Easement owner must have an ownership interest in the operation.

Some of the products must come from animals raised or crops grown on site; the remainder from animals or crops indigenous to Maryland.

Facility and parking area must cover no more than 2% (two percent) of the easement/district, or two acres, whichever is smaller.

Parking area must be pervious. Accessory sales area must not exceed 600 sq. ft.

BCALP also supported the request, stating:

The location is directly across from the existing farmstead and is located immediately adjacent to the road. This is consistent with the practice of protecting prime and productive agricultural soils. . . . The applicant's farm operation gives reasonable indication that he can meet the production requirements for Farmer's Roadside Stand and Farm Market. This request for a building of a maximum of 10,000 square feet that includes the farm market, processing and creamery [is] consistent with the MALPF approval, Baltimore County Zoning, and the Baltimore County Master Plan. This support is conditional upon Mr. Prigel receiving all necessary permits for the processing and creamery operation.

On October 15, 2009, the Board held a hearing regarding the Creamery's request for a special exception. The Creamery presented the testimonies of Mr. Prigel, two experts, a representative of the Greater Long Green Community Associ-

ation, and immediate neighbors to the farm. Michael Fisher, who was accepted as an expert in landscaping, architecture, zoning, and land development in Baltimore County, opined that the proposed use would not create any congestion in the roads, potential hazards, overcrowding, or interference with existing water provisions. Fisher also testified that the proposed use is "consistent with the R.C.2 agriculture zone" and would not have a detrimental impact on the health, safety, or general welfare of the locality.

Mickey Cornelius, who was accepted as an expert traffic engineer, stated that his company collected traffic volume data on Long Green Road by using a mechanical volume counter. After analyzing the results, he opined that "Long Green Road has fairly minor traffic volumes throughout the day." Taking into consideration the minimal accident activity in the area and "the low volume of traffic that would be expected to be generated by [the proposed Farm Market]," Cornelius concluded that approval of the Creamery's request "would not tend to create any congestion on the road."

William Pennington, a representative of the Greater Long Green Community Association, explained that their association was "organized for the purpose of helping our community maintain its rural and agricultural nature." Pennington testified that their organization has "taken a position . . . in support of the Prigels' objectives." Likewise, Robert Carter, Louis Reichart, James Currens, and Darrell Edwards—all neighbors to Bellevale Farm—expressed their support for granting the special exception.

Appellants presented the testimonies of Edward Blanton, who resides off Long Green Road, and Carol Trela, the secretary of the Long Green Valley Association. Blanton stated that his only concern "ha[s] to do with the traffic," because he started running exclusively on Long Green Road and wanted to minimize the possibility of accidents. Blanton stated that if the Creamery's request was approved, he would support it and become a customer, but he first wanted to make sure that the Prigels have "the legal right to put up a building

on that property." Trela testified, on behalf of appellants' organization, that the Prigels' new building is "out of place" in the valley. She believed that the development is incompatible with the R.C. zoning and with land conservation and that it would bring a lot of traffic into the area. Trela also testified that members of appellants' organization were afraid of losing their water and were concerned about the possible runoff from the farm going into a nearby Class III trout stream.

By opinion and order dated March 25, 2010, the Board granted the Creamery's request for a special exception for a farm market, or in the alternative, for a farmer's roadside stand. The Board found that the Creamery met the special exception standards for a farm market, as the building "will not be injurious to the health safety and welfare of the public nor would it create congestion on Long Green Road or any other nearby roads." According to the Board, the market is not expected to generate the type of traffic that comes with a grocery or convenience store.

Similarly, the Board found that the Creamery met the criteria for a farmer's roadside stand. The Board noted that the majority of the products to be sold will be dairy products from the cows on Bellevale Farm, and the non-agricultural goods "will be in the minority of products sold." The Board further stated:

The Board does not find any merit to [appellants'] argument that the inclusion of the words "grown and produced" in the definition of farmer's roadside stand and farm market in § 101.1 of BCZR prohibits the sale of dairy products from either the market or stand. The Board construes the meaning of "grown and produced" to mean that it originates on the farm and/or that it is indigenous to the area. The Board acknowledges that both a farm market and farmer's [roadside] stand are uses which support agricultural [sic]. The [appellants'] argument is essentially that only the sale of fruits and vegetables qualifies as the product which can be sold from either a market or stand. The Board does not believe that the County Council intended to restrict the sale of dairy products, beef, chicken and eggs, particularly in

light of the County Council's recent Bill 34–09 which explicitly stated that a farm market could be used in conjunction with a farmstead creamery to sell dairy products. Moreover, the term "farm product" is not defined in BCZR but has been defined in the Maryland Agriculture Code, § 10–601(c) to include eggs and dairy products.

The testimony of Edward Blanton as to the legality of constructing the building in the agricultural easement was countered by the documents from MALPF and Baltimore County which show that permission was obtain[ed] to build within the easement area.

The Board also noted that appellants did not offer any experts to counter the testimony of Fisher and Cornelius. Finally, citing the support of BCALP and the Deputy Zoning Commissioner, the Board concluded that the proposed use is "a small but critical component of the continued operation of one of the last few dairy farms in the county."

In April 2010, appellants and the People's Counsel for Baltimore County filed motions for reconsideration. Following a public deliberation on May 25, 2010, the Board issued an order on June 22, 2010, denying the motions. In pertinent part, the Board stated:

[A]ny Motion for Reconsideration should only be necessary when there has been substantive new case law or enactment of a statute not available previously, which would clearly merit a modification of a Board's previous decision. After careful consideration of both Motions, this Board has decided that the Motions for Reconsideration [do] not point to any fraud, mistake or irregularity in the conduct of the hearing in this case, nor does the Board find there is any indication of the existence of new law or evidence not available to the [appellants] or to People's Counsel at the time of the hearing.

The essence of both Motions center on [MALPF's] decision to permit the [Creamery] to build within the agricultural easement area. . . .

\* \* \*

... [T]his Board has no jurisdiction to reverse the decision of MALPF....

Additional facts will be provided, as necessary, below.

### Discussion

Appellants argue that the Board erred in granting the special exception for the farm market and, to the extent that the Creamery sought permission for a farmer's roadside stand, the Board erred in granting that request as well. According to appellants, the County Council explicitly prohibits the sale of dairy products at a farm market or farmer's roadside stand. In addition, appellants aver that the use intended by the Creamery is commercial in nature and inconsistent with the use of land that is subject to an agricultural easement. Moreover, appellants contend that the Creamery did not satisfy the conditions imposed by MALPF, did not exhibit compliance with the Baltimore County Master Water and Sewage Plan, and did not show, pursuant to BCZR § 502.1, that the use would not impact public health, safety, or welfare in the area.

The Creamery responds by stating that the Board properly granted its request. The Creamery argues that zoning regulations were amended "so that the sale of processed dairy products could be a primary purpose" of farm markets and farmer's roadside stands. Furthermore, the Creamery contends that its intended use falls within "commercial agriculture," which is permitted by the BCZR. The Creamery also notes that it satisfied the conditions imposed by MALPF and avers that appellants' arguments regarding water and the possible impact on public health, safety, and welfare are unsupported and without merit. We agree with the Creamery.

 "On appellate review of the decision of an administrative agency, this Court reviews the agency's decision, not the circuit court's decision." *Halici v. City of Gaithersburg,* 180 Md.App. 238, 248, 949 A.2d 85 (2008) (citing *Anderson v. Gen. Cas. Ins. Co.,* 402 Md. 236, 244, 935 A.2d 746 (2007)).

"Our primary goal is to determine whether the agency's decision is in accordance with the law or whether it is arbitrary, illegal, and capricious." *Md. Dep't of the Env't v. Ives,* 136 Md.App. 581, 585, 766 A.2d 657 (2001) (citation omitted). In other words, "[w]e apply a limited standard of review and will not disturb an administrative decision on appeal 'if substantial evidence supports factual findings and no error of law exists.'" *Tabassi v. Carroll County Dep't of Soc. Servs.,* 182 Md.App. 80, 86, 957 A.2d 620 (2008) (quoting *Howard County v. Davidsonville Area Civic & Potomac River Ass'ns, Inc.,* 72 Md.App. 19, 34, 527 A.2d 772 (1987)).

## I. Farm Market

A farm market is defined as:

An accessory or principal building or structure other than a dwelling which is used by one or more farmers for the sale of products grown, or grown and produced, primarily on their own farms or for the sale of other indigenous farm products. A farm market may sell a limited amount of locally produced nonagricultural goods such as handcrafted items, homemade baked goods, homemade preserves, and jams.

BCZR § 101.1. This definition was adopted by the County in 2009 after the County Council passed Bill 34–09. Prior to 2009, a farm market was defined as a structure "used by one or more farmers for the sale of *produce grown* primarily on their own farms or for the sale of other *locally grown produce.*" (Emphasis added to indicate changes). The previous definition also specifically provided for the sale of "processed dairy products."

Owners of properties located in R.C.2 zones may request a special exception for a farm market, subject to the following requirements:

1. The owner shall be an agricultural producer.

2. At least 50% of the produce sold annually shall be grown by the owner of the farm market and no more than

10% of the annual sales shall be locally produced nonagricultural goods.

 a. In the event of a crop failure due to drought, insect damage, disease or other causes beyond the control of the producer as determined by the Agricultural Land Preservation Advisory Board, the 50% minimum may be decreased by the Zoning Commissioner to a degree commensurate with the degree of crop failure.

 b. In the enforcement of 404.4.D.2, the Zoning Commissioner shall make the determinations in consultation with the Agricultural Land Preservation Advisory Board.

 3. A site plan shall be submitted indicating location and type of structure on the lot in question, ingress and egress, parking arrangement and proximity of dwellings on adjacent lots.

BCZR § 404.4D.

In addition, the proposed farm market shall meet the standards outlined in BCZR § 502.1. That section provides:

Before any special exception may be granted, it must appear that the use for which the special exception is requested will not:

A. Be detrimental to the health, safety or general welfare of the locality involved;

B. Tend to create congestion in roads, streets or alleys therein;

C. Create a potential hazard from fire, panic or other danger;

D. Tend to overcrowd land and cause undue concentration of population;

E. Interfere with adequate provisions for schools, parks, water, sewerage, transportation or other public requirements, conveniences or improvements;

F. Interfere with adequate light and air; [ ]

G. Be inconsistent with the purposes of the property's zoning classification nor in any other way inconsistent

with the spirit and intent of these Zoning Regulations; [ ]

H. Be inconsistent with the impermeable surface and vegetative retention provisions of these Zoning Regulations; nor [ ]

I. Be detrimental to the environmental and natural resources of the site and vicinity including forests, streams, wetlands, aquifers and floodplains in an R.C.2, R.C.4, R.C.5 or R.C.7 Zone.

BCZR § 502.1.

█ In this case, the Creamery satisfied the requirements of BCZR §§ 404.4D and 502.1. Mr. Prigel, who operates Bellevale Farm, testified that approximately 95% of the merchandise to be sold in the market would be dairy products acquired from the cows on the farm. Meanwhile, Michael Fisher, who was accepted without objection as an expert in landscaping, architecture, zoning, and land development in Baltimore County, stated that the proposed use would not create any congestion in the roads, potential hazards, overcrowding, or interference with existing water provisions. Fisher testified that the proposed parking area satisfied the surface requirement and noted that the market would not have a detrimental impact on the health, safety, or general welfare of the locality. Mickey Cornelius, who was accepted without objection as an expert traffic engineer, agreed that the proposed farm market "would not tend to create any congestion on the road." Based upon this testimony, there was substantial evidence presented at the hearing to support the Board's findings.

Relying on the changes to the definition of "farm market" brought on by Bill 34–09, appellants argue that the Board should have denied the Creamery's request because "milk is not grown" and therefore, the "sale of milk or milk products is explicitly not provided for by the County Council in its definition." Appellants fail to acknowledge, however, that in addition to amending the definition of "farm market," Bill 34–09 also created BCZR § 404.13 which governs farmstead cream-

eries. As it relates to farm markets and farmer's roadside stands, BCZR § 404.13 provides:

 B. All processing, preparing, and packaging activities of the farmstead creamery and *any farmer's roadside stand or farm market on the premises used to sell the dairy products* shall occupy no more than 10% of the contiguous farm property on which the overall dairying occurs or two acres in area, whichever is less. The milking operation is not included in this limitation.

 C. The combined square footage of all structures or buildings associated with the farmstead creamery as well as *any farmer's roadside stand or farm market on the premises used to sell the dairy products* may not exceed a total of 12,000 square feet. The milking operation is not included in this limitation.

(Emphasis added).

Based upon the language of BCZR § 404.13, it is evident that the County Council intended for operators of farm markets and farmer's roadside stands to be able to sell dairy products on their premises. Although Bill 34–09 deleted "processed dairy products" from the definition of "farm market," the creation of BCZR § 404.13 indicates, as the Creamery suggests, the intention to make "the sale of processed dairy products ... a primary purpose." As the Creamery points out, BCZR § 101.1 expanded "the [farm markets'] principal sales items from ... 'produce grown' to 'products grown or grown and produced' in order to expand sales to more than just fruits and vegetables." And, because the building associated with the Prigels' creamery occupies less than 10% of Bellevale Farm and measures less than 12,000 square feet, the Creamery satisfied the requirements of BCZR § 404.13.

 ■ Next, appellants argue that the Board erred in granting the special exception because selling goods at a farm market constitutes a "commercial use" prohibited by Md.Code (1973, 2007 Repl.Vol.), § 2–513(b) of the Agriculture Article ("Agric."). The relevant portion of that section states:

(b) *Use for commercial, industrial, or residential purposes.—*

(1) A landowner whose land is subject to an easement may not use the land for any commercial, industrial, or residential purpose except:

(i) As determined by the [MALPF], for farm- and forest-related uses and home occupations; or

(ii) As otherwise provided under this section.

Agric. § 2–513(b)(1).

In this case, MALPF "*approved* the construction of a 7,000 to 10,000 square foot building to house the creamery operation, processing facility and farm store," subject to seven conditions. (Emphasis added). According to appellants, the Creamery did not meet the last requirement, namely that the "[a]ccessory sales area must not exceed 600 sq. ft." Appellants are mistaken. At the hearing, Mr. Prigel explained the meaning of "accessory sales area" during the following exchange:

[PRIGELS' COUNSEL]: Now, what is meant by accessory sales area?

[MR. PRIGEL]: I believe that is non-agricultural products.

[PRIGELS' COUNSEL]: That's how the commission defines it?

[MR. PRIGEL]: Yes.

[PRIGELS' COUNSEL]: And that's your understanding from further correspondence from members of the commission?

[MR. PRIGEL]: Correct.

[PRIGELS' COUNSEL]: Now, what would be non-agricultural products that you would sell from your farm market?

[MR. PRIGEL]: It would be very few . . . . .

\* \* \*

Mixing bowls, platters, and things like that. Woodwork with a lathe.

\* \* \*

I mean, there could be some crafts that—well, definitely under 600 square feet.

From this testimony, there was sufficient evidence to support the Board's finding that the Creamery's accessory sale area would not exceed 600 square feet and that, therefore, the Creamery met MALPF's requirements.

Lastly, appellants contend that the Creamery failed to comply with the Baltimore County Master Water and Sewage Plan and failed to show that the farm market would not impact public health, safety, or welfare in the area. We disagree. As we previously stated, the Creamery presented expert testimony that the farm market "would not have a detrimental impact on the health, safety, or general welfare of the locality." By contrast, appellants presented no experts to opine on the possible negative impact of the proposed farm market. Likewise, appellants submitted no evidence to support their contention that the Creamery's well did not conform to the County's water and sewer plan. Without any evidence to the contrary, the Board did not err in relying upon testimony presented by the Creamery.

## II. Farmer's Roadside Stand

Appellants argue that the Creamery only "presented . . . a request for a Farm Market." They are mistaken. In its petition for special exception, the Creamery clearly stated that it sought to establish a farm market, "or *alternatively* . . . a Farmer's Roadside Stand per BCZR § 404.4C." (Emphasis added). This supports the Creamery's allegation that "[t]he Prigels requested both options, with the preference being the Farm Market and the alternative being the Farmer's Roadside Stand in the event that their petition for the Farm Market was denied."

A "farmer's roadside stand" is defined as:

An accessory structure, barn or other farm building or portion thereof owned and operated by an agricultural producer, used for the sale of indigenous farm products, the majority of which have been grown, or grown and produced,

on the premises, on adjacent land or on properties farmed by the same agricultural producer.

BCZR § 101.1. Similar to the "farm market," this present definition was adopted by the County in 2009, after the County Council passed Bill 34–09. Prior to 2009, a farmer's roadside stand was defined as a structure "used for the sale of indigenous farm products, the majority of which have been *grown on the premises* . . . ." (Emphasis added to indicate change).

Owners of properties located in R.C.2 zones may request a special exception for a farmer's roadside stand, subject to the following requirements:

1. The stand shall be located on a farm.
2. The owner shall be an agricultural producer.
3. At least 50% of the produce sold annually shall be grown on the premises where the stand is located or on adjacent farms or on other property farmed by the applicant.

 a. In the event of crop failure due to drought, insect damage, disease or other causes beyond the control of the producer, as determined by the Agricultural Land Preservation Advisory Board, the 50% minimum may be decreased by the Zoning Commissioner to an amount commensurate with the degree of crop failure.

 b. In the enforcement of 404.4C.2, the Zoning Commissioner shall make the determination upon the recommendation of the Agricultural Land Preservation Advisory Board.

4. A site plan shall be submitted indicating location and type of structure on the lot in question, ingress and egress, parking arrangement and proximity of dwellings on adjacent lots.
5. On the property in question, notice of the application for the use permit shall be conspicuously posted by the Zoning Commissioner for a period of 30 days following the filing of the application.

6. If a formal request for a public hearing is not filed, the Zoning Commissioner, without a public hearing, may grant a use permit for a farmer's roadside stand if the proposed use meets all the requirements of this subsection and any other applicable requirements. The use permit may be issued with such conditions or restrictions as determined appropriate by the Zoning Commissioner to satisfy the provisions of this section and to ensure that the farmer's roadside stand is not detrimental to the health, safety or general welfare of the surrounding community.

7. If a formal request for a public hearing is filed, the Zoning Commissioner shall schedule a date for the public hearing to be held not less than 15 days following public notice of such hearing in two newspapers of general circulation and not more than 60 days from the date of filing of the requests for public hearing.

8. Following the public hearing, the Zoning Commissioner may either deny or grant a use permit conditioned upon:

 a. His findings following the public hearing; and

 b. The manner in which the requirements of this section and other applicable requirements are met and any additional requirements as deemed necessary by the Zoning Commissioner in order to ensure that the farmer's roadside stand is not detrimental to the health, safety or general welfare of the surrounding community and which are deemed necessary to satisfy the objectives of Section 502.1 of these regulations.

■ As they apply to this case, the requirements set forth by BCZR § 404.4C for a farmer's roadside stand are similar to the requirements set forth by BCZR § 404.4D for a farm market. As explained above, the Creamery presented evidence that the proposed farm market or farmer's roadside stand would be located on Bellevale Farm and that 95% of the merchandise would be dairy products milked from the cows on the farm. The proposed parking area would satisfy the surface requirement and the building size would comply with

the provisions of BCZR § 404.13, as well as the conditions imposed by MALPF.

Because the Board's decision was supported by sufficient evidence, we uphold its grant of the Creamery's petition for special exception. Accordingly, we affirm the judgment of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**