REPORTED
IN THE COURT OF SPECIAL APPEALS
OF MARYLAND
Nos. 599
September Term, 2015

_____

BOARD OF LIQUOR LICENSE
COMMISSIONER FOR BALTIMORE CITY,
ET AL.

v.

BRETT AUSTIN ET AL.

_____

Krauser, C.J.,
Arthur,
Kenney, James. A., III
   (Senior Judge, Specially Assigned),
         JJ.

_____

Opinion by Kenney, J.

_____

Filed:  April 26, 2017

The transfer of a liquor license in Baltimore City often involves issues of life and death, and in some instances, zombies and phantoms.[1] In this case, the Circuit Court for Baltimore City reversed the September 25, 2014, two-to-one decision of the Board of Liquor Commissioners for Baltimore City (the "Board") that the license to sell liquor at an establishment previously known as Turner's in Federal Hill, (the "License"), had "expired." Appellants are the Federal Hill Neighborhood Association in addition to a number of individuals[2] (collectively referred to in this opinion as the "Association") and the Board. The appellees, Brett Austin and Joshua Foti, are the contract purchasers of the License (the "Contract Purchasers").

The question presented, slightly rephrased, is:

Did the circuit court err in its determination that the License had not expired by operation of law when the transfer of the License to the Contract

---

[1] A zombie is defined as "the supernatural power according to voodoo belief may enter into and reanimate a dead body." Merriam Webster, Merriam Webster's Collegiate Dictionary 1372 (10th ed. 2000). A phantom is defined as "something (as a specter) apparent to sense but with no substantial existence. Merriam Webster, Merriam Webster's Collegiate Dictionary 868 (10th ed. 2000). Both are used as slang terms to refer to a liquor license that has been permitted by the Board to survive, for transfer purposes, beyond the statutory expiration period.

[2] The docket entries indicate that, in addition to "the Association," the following individuals were interested parties to the suit: Arthur Adasse, Douglas Berkowitz, Michael Brassert, George Della, Sally Dworak-Fisher, Keenan Dworak-Fisher, Michael Eckhardt, John Ginovsky, Nancy Gordon, Tom Gregory, Joseph Halperin, Lynn Halperin, Alma Hays, David Hicks, Elizabeth Homer, Ivo Jamrosz, David Nicholas Kaw, Edward Kelly, Sarah Lambdin, Jeff Lewis, Rosalie McCabe, Helen Brooke Mcdonald, Vincent Mettle, Debra Nelson, Nick Patron, Joseph Reed, Paul Robinson, Lana Robinson, Linwood Simpler, Diana Sugg, Shirley Summers, Mark Tonti, David Wallace, Judi Wallace, and Kyle Warner.

Purchasers was not completed within 180 days after the Board approved the transfer?

We hold that it did and reverse the decision of the circuit court.

**FACTUAL AND PROCEDURAL BACKGROUND**

Notwithstanding the extended procedural history of this case, the dispositive facts are not in dispute. Turner's closed for business on or about July 11, 2009,[3] during the license year ending April 30, 2010. The first application to the Board to transfer the License to the Contract Purchasers was filed on June 19, 2009. That application was approved by the Board on July 23, 2009. On January 19, 2010, Samuel Daniels (the then-Executive Secretary of the Board) signed a memorandum recommending that the deadline to complete the transfer be extended 180 days (to July 5, 2010) "[b]ased on discussion w/ Mr. Austin and receipt of projected completion schedule."[4] The Board granted three additional sixty-day extensions to complete the transfer, all of which were granted after the prior extension period had ended. The last extension was granted on November 15, 2012. In the meantime, the License was renewed in the name of the Contract Purchasers for the license years ending on April 30 in 2011, 2012, and 2013.

---

[3] The fire permit for the premises expired on July 11, 2009.

[4] The statutory basis for the recommended extension, or whether the Board was even involved, is unclear. It appears that the Contract Purchasers filed their first and only request for a hardship extension in a letter dated August 13, 2014, which was more than 180 days after the transfer of the License had been approved.

On February 25, 2013, a second Application for Transfer and Expansion was filed.[5] The validity of the License itself was raised when, "despite having prevailed in their case in chief," the Association sought judicial review on that issue. On December 13, 2013, a hearing was held, and on December 23, the circuit court remanded the case to the Board to create a record on the validity issue. On February 20, 2014, the Board held the remand hearing "to determine the status of the license under the provisions of [Maryland Code (1957, 2011 Repl. Vol.) Article 2B, § 10–504(d) ("Article 2B § 10-504(d)")]" related to liquor license transfers and the expiration of a license 180 days after a license holder has closed the business or ceased actual alcoholic beverages business operations in Baltimore City. At that hearing, the Association argued that the License had "sat dormant since July 2009," and even though the "Board approved the application for a transfer of ownership to a new location and repeatedly extended [the] approval, no transfer was ever completed."

The Contract Purchasers argued that the annual renewal of the License without protest "can certainly be construed as a tolling of the period under Article 2B." Moreover, the "validity" of their License for May 1, 2013–April 30, 2014, "was ruled upon," and because they had relied on the renewals and the direction they received from the Board, "principles of collateral estoppel" and res judicata precluded revisiting the validity issue.

---

[5] The original intent was to transfer the license to 1100-06 South Charles Street. Later, it was determined to expand and utilize the original East Cross Street premises.

The Board, in the "decision phase" of the February 20, 2014 hearing, concluded that "even with an extension, legal or otherwise, the [L]icense would have been considered dormant" as of October 17, 2011, notwithstanding extensions or "a transfer of ownership hearing after that time." Characterizing the Contract Purchasers' arguments as "generally center[ing] around estoppel," the Board concluded "that the only way to avoid the injustice . . . is to declare the [L]icense viable as of today."[6]

The Association again sought judicial review of the Board's decision. On August 13, 2014, a Stipulation of Dismissal and Agreement for Remand to the Board was entered at the request of the Board and the Association and, on September 17, 2014, the circuit court issued an order remanding to the Board and dismissing the case. The stated purpose of the remand was "so the [Board] can conduct further proceedings on this matter within sixty (60) days after the date of the dismissal of this appeal."

The second remand hearing was held on September 25, 2014.[7] The Contract Purchasers moved to dismiss the proceeding on the grounds that the Board had failed to inform them of the judicial review proceedings challenging the Board's February 20, 2014 decision that the License was "viable." In response, the Chair noted that the Contract Purchasers had actual notice of the judicial review proceedings because their

---

[6] At that time, the members of the Board were Stephen Fogleman, Chairman, Elizabeth C. Smith, and Harvey E. Jones.

[7] The composition of the Board had now changed. The new Chairman was Thomas Ward, and Dana Petersen Moore had replaced Elizabeth C. Smith. Harvey E. Jones remained on the Board.

-4-

counsel, by "letter dated April 9, 2014," wrote the then-Chairman of the Board acknowledging that the Association "had filed an appeal in the Circuit Court." Observing that the Contract Purchasers had not appealed the circuit court decision, the Board denied the motion to dismiss and the hearing proceeded.

As to the Board's right to reconsider the viability of the License, the Association argued that the issue was not one of fact, but one of law that the Board was entitled to review. It pointed out that the Board's prior decision had been based on a theory of estoppel resulting from the Board's acceptance of renewal fees after the License had expired. But, it argued, "the government cannot be estopped under the same terms as other litigants," and the Contract Purchasers could not rely on the "unauthorized acts" of the Board's agents.

The Association called as a witness former Senator George Della, who had sponsored the 2000 legislation creating Article 2B § 10-504(d), which is commonly referred to as the "180 day rule." According to Senator Della:

> It basically says [a] license can remain dormant for 180 days. And then if there's a hardship, then that licensee can come back to the [B]oard and make their case, if they're in a hardship situation. And then the Board could then grant them another extension of 180 days.
>
> * * * *
>
> Beyond that, if they don't activate that license, that license is dead. That's what the legislative intent is behind the 180 day rule. And the Board knew it. The Board knew it.

Counsel for the Contract Purchasers stated that they were not arguing estoppel or a mistake by the Board or its agents. Nor were they relying on the hardship extension provisions of the statute. Rather, they were contending, citing *Yim, LLC v. Tuzeer*, 211

Md. App. 1 (2013), that, notwithstanding cessation of the business itself, the successive renewals of the License "tolls the 180 period." In addition, the Contract Purchasers advanced a policy argument that the Board's adoption of the Association's position would thwart redevelopment efforts in the city because these projects can "take years" to complete. The better policy, in their view, was to permit a developer to "preserve" an existing license by renewals rather than issuing a new license. That, they argued, would satisfy the legislative "goal [of] reduc[ing] the number of licenses."

In response, counsel for the Association asserted that the Contract Purchasers' policy argument "is essentially something to be taken up with the legislature," but it did not reflect the intent of the current legislation, and thus, its adoption by the Board would be a "rewrite [of] the law."

The Board expressly ruled on the validity of the License and, by implication, on the Contract Purchasers' recently filed hardship extension request, which would fail in the absence of a viable License to transfer. The Chairman concluded that "the license has expired." He based his decision on the "clear command of the law," and which had been "ignored" by the Board in granting the earlier purported extensions and license renewals "outside the scope of its authority." Commissioner Petersen Moore "agree[d]" with the Chairman "for all the reasons stated." Although Commissioner Jones also agreed that "the license is dead," he voted "no" because, under the circumstances, he thought that a "second chance is needed."

On October 7, 2014, the Contract Purchasers filed a Petition for Judicial Review. A hearing was held on May 1, 2015, and on May 5, 2015, the circuit court reversed the

Board, stating that its decision "was not supported by substantial evidence and was clearly erroneous as a matter of law." The court explained that:

> failure to complete a transfer of a license within 180 days pursuant to Art. 2B § 10-503(d)(4) does not carry a sanction of expiration of the license. To hold that such a sanction applies is illogical in the face of Art. 2B § 10-504(d)(2)(i), which provides an exception to the 10-504(d)(2) 180 day expiration provision when a transfer "has been approved or is pending." Furthermore, in the instant case the Board approved the transfer on July 23, 2009, and the record contains several references to the approval and the fact that the transfer "remains pending." Thus, the 2B § 10-504(d)(2)(i) exception for approved or pending transfers would apply.

The Board filed its timely appeal on May 29, 2015.

## STANDARD OF REVIEW

"On appellate review of the decision of an administrative agency, this Court reviews the agency's decision, not the circuit court's decision." *Long Green Valley Ass'n v. Prigel Family Creamery*, 206 Md. App. 264, 273 (2012) (quoting *Halici v. City of Gaithersburg*, 180 Md. App. 238, 248 (2008)). We "determine whether the agency's decision is in accordance with the law or whether it is arbitrary, illegal, and capricious." *Prigel Family Creamery*, 206 Md. App. at 274 (quoting *Md. Dep't of the Env't v. Ives*, 136 Md. App. 581, 585 (2001)). In doing so, we will uphold factual decisions and discretionary judgments that are "supported reasonably by substantial evidence." *HNS Dev., LLC v. People's Counsel*, 425 Md. 436, 449 (2012) (citations omitted). Our review of the agency's legal conclusions is less deferential, but, we respect the agency's expertise in its field and give considerable weight to its interpretation and application of any statutes or regulations it is charged with administering. *Thanner Enters., LLC v. Balt. Cty.*, 414 Md. 265, 275 (2010).

When, as here, the issue centers on statutory construction, and thus, legislative intent, we look first at "the statute's plain language as ordinarily understood" because that is "[t]he most reliable indicator of the [legislative] intent." *Id.* at 277. And, when the language is "clear and unambiguous, we ordinarily 'need not look beyond [its] provisions and our analysis ends.'" *Opert v. Criminal Injuries Comp. Bd.*, 403 Md. 587, 593 (2008) (alteration added) (quoting *Barbre v. Pope*, 402 Md. 157, 173 (2007)). "[W]here a statute is plainly susceptible of more than one meaning and thus contains an ambiguity, courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of the enactment." *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75 (1986). In other words, a provision within an integrated statutory scheme must be understood in its broader context and, to the extent possible, harmonized with the other provisions. *Balt. Gas & Elec. Co. v. Pub. Serv. Comm'n of Md.*, 305 Md. 145, 157 (1986).

## Contentions of the Parties

The Association contends that under Article 2B, § 10-504(d), a liquor license in Baltimore City expires 180 days after the licensee "has closed the business or ceased active alcoholic beverage business operations." If an application to transfer the license is filed and approved by the Board, the Association asserts that the approved transfer "*must be completed—by operating an alcoholic beverage business—within 180 days*," unless,

under Article 2B § 10-504(d)(4), the Board finds that undue hardship exists.[8] (Emphasis in original). Therefore, it argues, the grant of any extensions in this case was contrary to the "plain language" of the statute, and any Board practice or course of conduct "inconsistent with the statutory scheme" is entitled to "no weight."

As to the applicability of the doctrine of equitable estoppel, the Association contends that the Board, "as a government agency," cannot be "estopped from applying the express direction it has been given by the Legislature merely because an employee of the agency accepted [a renewal] payment for an expired license." In support, it cites *Marzullo v. Kahl*, 366 Md. 158, 195 (2001) (Baltimore County Board of Appeals not estopped from enforcing zoning regulation that prevented appellant, who had substantially constructed a reptile barn and obtained a permit approval to do so from the Baltimore County Department of Permits and Licenses, from using his property to breed reptiles); *ARA Health Servs., Inc. v. Dep't of Pub. Safety and Corr. Servs.*, 344 Md. 85, 95 (1996) (Department of Corrections not estopped from seeking reimbursement for overpayment of a contract provider to which the Department had remitted the excessive payments without objection); and *Heckler v. Cmty. Health Servs. of Crawford Cty. Inc.*, 467 U.S. 51, 60 (1984) (Department of Health and Human Services not estopped from recouping overpayments made to a non-profit organization).

---

[8] Article 2B 10-504(d)(3) states that a licensee "may make a written request to the Board for an extension of the life of the license due to undue hardship for a time period of no more than a cumulative period of 360 days after the date of closing or cessation of alcoholic beverages business operations of the business [for which the license is held]."

The Board contends that "under the appropriate interpretation of the applicable statutory provisions, the License had expired as a matter of law." The transfer application was approved by the Board on July 23, 2009, and under Article 2B § 10-503(d), the transfer had to be completed by January 19, 2010. Once the 180 day expiration period provided for in the statute was "no longer suspended," the License "which had already been inactive for well over 180 days–expired as a matter of law." Therefore, according to the Board, any "purported" extensions were invalid because they are not authorized by the statute. And, "[t]he same analysis applies" to the Board's acceptance of renewal fees "for the inactive License," because the renewal of the License does not "reset" or "extend" the "180 day rule." The Board recognizes, however, that there may be a situation where the transfer deadline "overlap[s] two licensing periods." When that happens, the license would have to be renewed "before the transfer has been completed."

The Contract Purchasers mount a two pronged attack on the denial of their motion to dismiss the remand proceedings. The first is the failure of the Board to notify them of the judicial review proceeding initiated by the Association and the subsequent remand to the Board by stipulation. The second is the contention that the Board was

> barred from holding a second hearing on the same issue when a substantial record has already been created before it, it rendered a decision based on that record . . . and no hearing of any kind, nor ruling made on any substantive issue, has been heard nor rendered by the Circuit Court for Baltimore City.

As to the Board's interpretation of the statute at the September 17, 2014, remand hearing, the Contract Purchasers appear to object to the fact that Senator Della had been called as a witness and had testified to the intent of the "180 day rule" legislation.[9]  They further contend that the Board "accepted legal conclusions drawn by [Senator] Della as the basis for its decision."  More particularly, however, they point to "the lack of recognition by both [Senator Della] and [the Board] of the pertinent section of Article 2B, namely § 10-504(d)(2)(i)."[10]  They argue that the subsection's "then pending" language "expand[s] upon the 180 day rule," and, citing *Yim*, 211 Md. App. at 36, that a purchaser of such a license can keep a license from expiring by annual renewals of the license as long as the intended transfer remains "pending."

The Board, in its reply brief, contends that the Contract Purchasers' reliance on *Yim* is "misplaced" because the *Yim* Court "merely held that a liquor license did not

---

[9] At the remand hearing the Contract Purchasers' counsel only objected to Senator Della's testimony "for the record as to the legal conclusion from the witness." He stated that Senator Della was "certainly entitled to testify as to the legislative intent," but it was the Board's responsibility "to interpret the laws . . . in terms of what happens to the license after it's dormant." The Chairman commented that counsel was "absolutely correct" as to any legal conclusion on the part of Senator Della and nothing in the record suggests that the Board relied on his testimony in reaching its conclusion in this case. Senator Della's testimony included background on why he introduced the legislation and was referred to by one of the Board members as a "living legislative history."

[10] Article 2B Section 10-504(d)(2)(i) provides that an alcoholic beverage license shall expire 180 days after the holder's business has closed or ceased alcohol sales, unless: "An application for approval of a transfer to another location or an application for assignment to another person pursuant to § 10-503(d) of this subtitle has been approved or is *then pending*." (Emphasis added). Section 10-503(d) provides the procedures for transferring a license.

-11-

expire when the licensee had filed a timely request for a hardship extension under § 10-504(d)(2)(iii) of Article 2B, even though the licensee did not file his annual renewal application on time while the hardship request was pending." As to "impermissibly" relying on the testimony of Senator Della "as the basis" for its interpretation of the statutory language, the Board "made clear that it was not seeking a legal conclusion" but "only background information on the legislative history" from Senator Della and it made only a mention of legislative history in its "methodically summarized" opinion.

In regard to the Contract Purchasers' argument that the Board was not authorized to hold the September 25, 2014 hearing and reconsider its February 20, 2014 decision, the Board states that it denied the Contract Purchasers' motion to dismiss and the circuit court had agreed. Therefore, in the absence of an appeal of the circuit court decision by the Contract Purchasers, the denial of the motion to dismiss was not "properly" before the Board in the September 25, 2014 hearing but had it been, it would fail.

Regarding the Board's failure to provide notice to the Contract Purchasers of the Association's petition for judicial review, the Board argues that the record demonstrates actual notice to the Contract Purchasers within three weeks of the petition being filed. Nevertheless, they took no action to participate in the proceeding in the months leading up to the circuit court's remand to the Board. Moreover, any "technical deficits" resulting from the Board's failure to provide notice "were cured" because there was no judicial review as a result of the remand and the Contract Purchasers had a full opportunity to participate in the subsequent proceedings.

As to Contract Purchasers' res judicata argument, the Board, citing *Board of County Comm'rs of Cecil Cty. v. Racine*, 24 Md. App. 435, 450 (1975), acknowledges that principles of res judicata may apply to a final administrative agency decision "passed in the exercise of its discretion upon issues of fact or upon mixed issues of law and fact." But, "when there has been substantial change of conditions or it is shown that the decision was the product of . . . mistake," the Board's decision may be reconsidered and, in the proper case, reversed. *Id.* Here, on remand, the Board "was singularly focused" on "reconsidering its prior interpretation and application of the law," and not the facts of the case. Not only did the Board have the right to reconsider, it had a duty to do so.

The Association, in its reply brief, also responds to the Contract Purchasers' argument that the remand proceedings should have been dismissed based on "lack of notice" by the Board and "principles of *res judicata*." In regard to the former, it too references the Contract Purchasers' actual notice and their failure to intervene. Regarding the latter, the Association contends that the remand meant that there was no final judgment. The February 20, 2014, decision of the Board went to the circuit court on the Association's petition for judicial review and was then remanded to the Board for further proceedings without a ruling on the merits. But, even if there had been a final judgment, the Association agrees that "an agency is not bound by inflexible principles of res judicata with regard to decisions that are legally, as opposed to factually, erroneous." Quoting *Radio Communications, Inc. v. Public Service Commission of Maryland.*, 50 Md. App. 422, 430–31 (1982), the Association asserts "an affirmative duty upon an administrative agency to correct a prior decision when, because of an error of law, a

continued adherence to its erroneous decision would place a litigant at an unfair disadvantage.'"

The Association rejects the circuit court's reading of Article 2B, § 10-503(d)(4) that a "pending" transfer would extend the life of the License. It contends that argument is "based on a misreading" of the relevant provisions of the statute.

As to the Contract Purchasers' reliance on *Yim*, the Association asserts that the "primary issue" in that case was "whether alleged defects in applications to transfer the license rendered the transfers ineffective." But, because "any defects in the applications to transfer had been corrected . . . the statutory period was tolled," and the License did not expire. In its view, the Contract Purchasers "have attempted to seize on language in dictum in a footnote in *Yim*" that is unrelated to the Court's decision in that case.

## ANALYSIS

We begin by addressing the Contract Purchasers' arguments regarding the denial of their motion to dismiss the remand proceeding. The first argument relates to the failure of the Board to notify them that the Association had sought judicial review of the Board's February 20, 2014, decision regarding the License.[11] They raised this argument in passing

---

[11] Maryland Rule 7-202(d)(3) provides:

(3) *Notice From Agency to Parties*.
(A) Duty. Unless otherwise ordered by the court, the agency, upon receiving the copy of the petition from the clerk, shall give written notice promptly to all parties to the agency proceeding that:
(i) a petition for judicial review has been filed, the date of the filing, the name of the court, and the civil action number; and

(Continued…)

-14-

at the September 25, 2014 remand hearing and in the circuit court hearing on their Petition for Judicial Review of the Board's Decision. They also argued that the Board violated its Administrative Rule Number One, which was adopted to avoid the Board "reviewing the decisions of past liquor boards" and required motions for reconsideration to be filed within sixty days.

The circuit court expressly rejected the argument related to Administrative Rule Number One because there was no motion for reconsideration in this case. The circuit court otherwise found the "denial of the motion to dismiss was appropriate" and moved directly to the issue of whether the License had "expired."

---

(…continued)

> (ii) a party who wishes to oppose the petition must file a response within 30 days after the date the agency's notice was sent unless the court shortens or extends the time.
> (B) Method. The agency may give the notice by first class mail or, if the party has consented to receive notices from the agency electronically, by electronic means.

And, in regard to a "response," Maryland Rule 7-204 provides, in relevant part:

> **(a) Who May File; Contents.** Any person, including the agency, who is entitled by law to be a party and who wishes to participate as a party shall file a response to the petition. The response shall state the intent to participate in the action for judicial review. No other allegations are necessary.
>
> * * * *
>
> **(c) Time for Filing Response; Service.** A response shall be filed within 30 days after the date the agency mails notice of the filing of the petition unless the court shortens or extends the time. The response need be served only on the petitioner, and shall be served in the manner prescribed by Rule 1-321.

The Contract Purchasers did not press the notification argument or question the court's failure to expressly address it, and they did not appeal the court's decision. Therefore, the issue is not before us on appeal, but, if it were, they would fare no better.

Not only did the Contract Purchasers have actual notice of the petition for judicial review "as early as April 9, 2014," they took no action in that proceeding in the 161 days between that date and September 17, 2014, when the court signed the order for remand. And, because of the remand, there was no judicial review on the merits. In short, the purpose of the rule was effectively satisfied, and the Contract Purchasers were not deprived of an opportunity to assert their legal rights before the court.

As to any concern regarding Senator Della's testimony, the circuit court did not "find any error," and it is clear from the record that the Board's decision that the License had expired was based on the plain language of the applicable statutory provisions and not on Senator Della's testimony.[12]

---

[12] In *Kelly v. Marylanders for Sports Sanity, Inc.*, 310 Md. 437, 471 n.18 (1987), the Court of Appeals commented that statements of legislative intent by individual legislators "run[s] afoul of well-recognized principles," citing Norman J. Singer, *Sutherland Statutory Construction*, § 48.16–17 (4th ed. 1986). The current version of section 48.16 indicates "[a] corollary to the general rule against the use of statements by individual legislators made during debate on a bill directs courts not to consider testimony about legislative intent by members of the legislature which enacted a statute." 2A Norman J. Singer, *Sutherland Statutory Construction*, § 48:16 (7th ed.). And that "[p]ostenactment statements made by a legislator about legislative intent, including affidavits, are not part of the original enactment's legislative history." *Id.* The current version of section 48.17 provides, in part, that "[c]ourts are cautious . . . and usually disregard any reference to an individual's legislative motivation except as expressed in a statute itself." *Id.* § 48:17. Here the legislation itself clearly expresses the motivation and intent of the legislature (of which Senator Della was a small but important part). Although his testimony was

(Continued…)

The Contract Purchasers argue that the Board was "barred from holding a second hearing [because] a substantial record ha[d] already been created before it, it [had] rendered a decision based on that record, and no hearing of any kind, nor ruling made on any substantive issue, ha[d] been heard nor rendered by the Circuit Court of Baltimore City." In support, they cite *Gaywood Comty. Ass'n v. Metro. Transit Auth.*, 246 Md. 93 (1967); *Woodlawn Area Citizens Ass'n v. Board of Cty. Comm'rs for Prince George's Cty.*, 241 Md. 187 (1966); *Whittle v. Bd. of Zoning Appeals of Balt. Cty.*, 211 Md. 36 (1956); *Bensel v. Mayor and City Council of Balt.*, 203 Md. 506 (1954); and *Mayor and City Council of Balt. v. Linthicum*, 170 Md. 245 (1936).

They assert that such cases, especially *Whittle*, 211 Md. 36, stand for the proposition that the Board, as an administrative body exercising quasi-judicial authority, could not reach a different conclusion on the viability of the License because "the facts and the law . . . have remained unchanged since February 20, 2014." Quoting *Gaywood Community Ass'n* 246 Md. at 99-100, they state that their argument "rest[s] not strictly on the doctrine of res judicata, but upon the proposition that it would be arbitrary for the Board to arrive at opposite conclusions on substantially the same state of facts and the same law." They draw further support from *Criminal Injuries Comp. Bd. v. Gould*, 273 Md. 486 (1975), in which the agency first determined that the claimant was an independent contractor, and later, "upon its own initiative," and on the same facts,

_____

(…continued)
inadmissible for purposes of discerning legislative intent, its admission was, in our view, harmless in this case.

determined he was an employee. *Id.* at 519. There, the Court of Appeals held that the agency's "attempt to redetermine [Gould's] status was clearly erroneous as a matter of law." *Id.*

The redetermination in this case came about when the Association filed for judicial review of the Board's initial decision. Rather than a reapplication of the same facts to the same law, the issue before the Board in the "second hearing" was essentially the interpretation of the law itself, and whether it had made a mistake in its prior interpretation of the controlling law. Because it determined that it had, the Board could reverse its prior decision. As the *Racine* Court concluded: "Perpetuation of illegality by an administrative body by inflexible application of the principle of res judicata is impermissible." *Racine*, 24 Md. App. at 452. Notably, the *Racine* Court found support for that conclusion in *Gould*, in which the Court of Appeals stated "[m]istaken interpretations of law, however honestly arrived at, are held not to be within the exercise of sound administrative discretion and the legislative prerogative, but to be arbitrary and illegal." 273 Md. at 521.

Turning now to the expiration of the License in this case, our analysis begins and ends with the provisions of Article 2B, §10-504(d), read in the context of the statutory scheme:

(d) Baltimore City. --

(1)(i) This subsection applies only in Baltimore City.
    (ii) In this subsection, "Board" means the Board of License Commissioners or the Office of the Comptroller, whichever is the issuing party.

(2) 180 days after the holder of any license issued under the provisions of this article has closed the business or ceased active alcoholic beverages business operation of the business for which the license is held, the license shall expire unless:

(i) An *application* for approval of a transfer to another location or an *application* for assignment to another person pursuant to § 10-503(d)[13] of this subtitle *has been approved or is then pending*;

(ii) An *application* pursuant to § 10–506[14] of this subtitle *has been approved or is then pending*; or

(iii) A *written request for a hardship extension*, as provided in this subsection, is *filed within the 180–day period*.

(3) The licensee or other appropriate interested parties may make a written request to the Board for an extension of the life of the license due to undue hardship, *for a time period of no more than a cumulative period of 360 days* after the date of closing or cessation of alcoholic beverages business operations of the business for which the license is held.

(4) After a hearing conducted on the extension request, on a finding that undue hardship currently exists causing the closing or cessation of business operations, the board may grant an extension of the life of the license for a time period not to exceed 360 days as defined in paragraphs (3) and (5) of this subsection.

---

[13] Article 2B § 10-503(d), in relevant part, states:

(1) This subsection applies only in Baltimore City.

(2) A transfer of any license may only be made as authorized in subsection (a) of this section if the Board has presented to it a receipt or certificate from the Director of Finance showing there are no unpaid taxes on the merchandise, fixtures, and stock of the transferor due to the City of Baltimore or the State of Maryland.

\* \* \* \*

(4) A transfer of any license shall be completed not more than 180 days after the Board approves the transfer.

[14] Article 2B § 10-506 concerns rules and regulations related to the expiration or continuation of a license of a deceased license holder.

(5) It is the intent of this subsection that *the total time period for which a license may be deemed unexpired under paragraph (2) of this subsection is 180 days if no undue hardship extension is granted, and no more than 360 days if an undue hardship extension has been granted*. The time period begins at the earlier of the closing of the business or cessation of alcoholic beverages business, and shall be tolled only upon the filing of an application or request described in paragraph (2) of this subsection, the expiration period to begin running again, cumulatively to the time period before the filing of the application or request, upon the occurrence of the later to occur of the following events:

    (i) Final action of the Board granting or denying a request authorized by paragraph (3) of this subsection;

    (ii) Final action of the Board denying an application described under paragraph (2)(i) or (ii) of this subsection; or

    (iii) Final judgment of the appellate court when judicial review of the Board's action on an application or request authorized by paragraph (2) or (3) of this subsection has been sought, or on dismissal of a petition for judicial review.

(6) If an application or request to the Board described in paragraph (2) or (3) of this subsection is withdrawn, there shall be no tolling of the period for automatic expiration of the license and it shall be deemed as if no such application or request was filed.

(Emphasis added).

The plain language of the statute supports the Board's conclusion at the remand hearing that the License had "expired." The closing of Turner's in July of 2009 triggered the 180 day rule ("180 days after the holder of any license . . . has closed the business or ceased active alcoholic beverages business operations . . . the license shall expire[.]" Article 2B, §10-504(d)(2)). The 180 days can be tolled by "[a]n application for approval of a transfer to another location or an application for assignment to another person" which "has been approved or is then pending." In context, "pending" clearly refers to a transfer application that is awaiting Board action and not the intended completed transfer. In the absence of a "hardship extension" by the Board, the transfer of the License had to

-20-

be completed not more than 180 days after the Board *approved* the transfer on July 23, 2009.

Not only is the plain language of the statute clear, paragraph (5) of the subsection states the legislative intent, that is, "the total time period for which a license may be deemed unexpired . . . is 180 days if no undue hardship extension is granted, and no more than 360 days if an undue hardship extension has been granted." *Id.* § 10-503(d)(5). And, this same intent is reflected in other related statutory provisions. For example, the initial transfer request was filed under § 10-503(d), which also provides that the transfer "shall be completed not more than 180 days after the Board approves the transfer." And, under section 10-504(d), a hardship extension "filed within the 180 day period," may extend the life of the license to "no more than 360 days" from "the date of closing or cessation of alcoholic beverages business operations[.]"

When the application was approved on July 23, 2009, the applicant had 180 days to complete the transfer, i.e., until January 19, 2010, subject to filing a request for a hardship extension during the 180 day period.[15] As noted, no hardship extension request was filed until August 13, 2013. But, even if the first 180 day extension could be

---

[15] Article 2B Subsection 10-504(4) indicates that the Board may, after a hearing, "on a finding that undue hardship currently exists, grant an extension."

considered a hardship extension, the transfer had to be completed within 360 days of the closing of the business or the cessation of liquor sales in July of 2009.[16]

At the September 25, 2014 hearing, counsel for the Contract Purchasers indicated that they had "never filed for 180 day hardship, but what [they] did do was renew the license every year," and that "the renewal tolls the 180 day period" to complete the transfer. On appeal, and "[a]ssuming arguendo, the five (5) years of license renewals cannot be construed as evidence of a 'pending transfer,'" the Contract Purchasers argue, citing *Yim*, "the renewals are still permitted by law to preserve the validity of the license[.]" We do not agree.

In *Yim*, the Court considered whether a liquor license issued to Two Sisters, LLC for its restaurant operation had expired for its failure to renew the license in a timely manner. 211 Md. 21-24. In its analysis, the Court noted the difference between the Board's authority to accept a late filed renewal application and its authority under Article 2B § 10-504(d), where "[s]eparate statutory provisions apply." *Id.* at 26. The Court concluded that a late filed renewal application, which could be accepted by the Board, did not preclude the filing of a hardship extension within 180 days of the "last day of active alcoholic beverages business." *Id.* at 34.

The Contract Purchasers seek support in a footnote in *Yim* that states: "As we discuss below, this time period [the 360 days from cessation of alcoholic beverages

---

[16] Whether the Board's failure to act on a pending application could extend the life of a license beyond the 360 days from the close of business or cessation of liquor sales is not before us.

business] is held in abeyance upon the receipt of a transfer or renewal application, making the effective length of the hardship extension longer." *Id.* at 36 n.30. The footnote is unrelated to the issue being considered by the *Yim* Court and has no application to the facts of this case. In its later discussion, the Court states that if the Board "grants the transfer application, the transfer *must occur within 180 days of the Board's approval.*" *Id.* at 38 (emphasis added). But, "once the Board granted the hardship extension request, Two Sisters' license was considered unexpired for 360 days after Two Sisters stopped serving alcohol." *Id.* The Court stated that the 360 days is tolled when "a transfer application is pending" and commented that "there is no statutory requirement that Board render a decision on a transfer application within a certain period of time." *Id.*

The language of the footnote in no way suggests that the renewal of a license overcomes the requirements of Article 2B § 10-504(d) to complete an *approved* transfer within 180 days of the approval in the absence of a granted hardship extension request. At most, it recognizes a possible delay between the filing of a transfer request and it being acted upon by the Board. *See* footnote 17*, supra* at 21. That the Two Sisters license "survived beyond Two Sisters' business itself and lived on to be renewed or transferred," *Id.* at 36, simply means that the Two Sisters license was kept alive on the statutory life support of a timely hardship extension request that was filed within 180 days of the cessation of the alcohol sales business.

In sum, the Board correctly determined that the License had expired. And, neither the approved but uncompleted transfer nor the Board's subsequent renewals of the License could imbue it with new life.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. COSTS TO BE PAID BY APPELLEES.**